UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AMIBLU TECHNOLOGY AS

VERSUS

U.S. COMPOSITE PIPE SOUTH AND
KEN M. THOMPSON, LLC

CIVIL ACTION

22-259-SDD-RLB

**RULING**

Before the Court is the *Motion to Dismiss*[1] filed by Defendants U.S. Composite Pipe South and Ken M. Thompson, LLC (collectively referred to as "USPC" or "Defendants"). An *Opposition*[2] was filed by Plaintiff Amiblu Technology AS f/k/a Flowtite Technology AS ("Flowtite"), to which Defendants filed a *Reply*.[3] For the following reasons, the *Motion* is denied.

**I.    BACKGROUND**

Under 28 U.S.C. § 2201(a), the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Flowtite brings this action for declaratory relief regarding its rights and standing under an agreement—the intellectual property license agreement ("License Agreement" or "Agreement")—between Flowtite and USPC. Flowtite is a Norwegian Company that manufactures reinforced plastic piping.[4] USCP is a Louisiana company that manufactures the same.[5]

---

[1] Rec. Doc. 21.
[2] Rec. Doc. 30.
[3] Rec. Doc. 32.
[4] Rec. Doc. 15, ¶¶ 1 & 7.
[5] *Id.* ¶ 2.

Flowtite owns certain intellectual property, know-how, and trade secrets related to the manufacturing of continuous wound glass reinforced plastic piping (the "Flowtite Process").[6] On January 20, 2008, USPC and Flowtite entered into the License Agreement, which granted USCP access to the Flowtite Process for "an unlimited duration" subject to "the terms and conditions set forth in th[e] Agreement."[7] This included an exclusive license to manufacture, make, and sell products using the Flowtite Process in the United States and Canada.[8]

Article III of the Agreement specified that USPC would pay royalties through March 1, 2012, after which, USPC would have three consecutive renewal options to "extend the term of th[e] Agreement" for five years "upon written notice of exercise of such option at least ninety (90) days prior to the expiration of the term, or extended term, hereof."[9] The Agreement granted USPC certain additional rights "during the Period of Royalty Payments" ("Royalty Period").[10] These rights, hereinafter referred to as the "Auxiliary Rights," included (1) authorization of USPC to state on its products that it was manufacturing "under license from [Flowtite]," and to use "the relevant Trademarks and Copyrights of Flowtite" and (2) right of access to any additional information and know-how related to the Flowtite Process developed during the Royalty Period.[11]

USPC subsequently renewed the initial term of Agreement on March 1, 2012, and again on March 1, 2017.[12] However, Flowtite alleges that USPC failed to timely extend

---

[6] Rec. Doc. 15, ¶ 7.
[7] Rec. Doc. 1-4, p. 3.
[8] *Id.*
[9] *Id.*, p. 4.
[10] *Id.*, p. 3-4.
[11] *Id.*
[12] Rec. Doc. 15, ¶ 16.

the most recent term of the License Agreement, which expired on March 1, 2022.[13]

Through this suit, Flowtite seeks a declaratory judgment stating that "[t]he term of the Agreement has ended and that USCP no longer has "any further license or other rights, exclusive or otherwise, to use the Flowtite Process."[14] Flowtite also seeks relief stating that the Auxiliary Rights terminated upon the expiration of the last renewal period, and "Flowtite is the sole owner of all Patents, Trademarks, Copyrights, or other intellectual property rights as to the Flowtite Process and Flowtite Mark, and is free to license any or all such rights as it sees fit to any third party now that the term of the Agreement has ended."[15] USPC now moves to dismiss the *Complaint* for failure to state a claim.

## II. LAW

### A. Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked

---

[13] Rec. Doc. 15, ¶ 18.
[14] Rec. Doc. 15, ¶ 25.
[15] *Id.*
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equities, Inc.*, 540 F.3d 333. 338 (5th Cir. 2008).
[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (hereinafter "Twombly").

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[24]

### B. Choice of Law

The License Agreement includes a choice of law provision stating that Texas law applies. Under Louisiana choice of law principles, a choice of law provision in a contract is presumed valid and must be given effect unless there is statutory or jurisprudential law to the contrary or public policy warrants reformation.[25] Absent objection by either party

---

[19] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[21] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
[22] *Id.*
[23] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[24] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[25] *Barnett v. American Const. Hoist, Inc.*, 2011-1261, p. 5 (La. App. 1 Cir. 2/10/12) 91 So.3d 345, 349 (citing La. Civ.Code Ann. art. 3540).

and discerning no independent basis for objection, the Court concludes that Texas law controls.

### III. ANALYSIS

There are two grants of rights at issue in this case: 1) the license of the Flowtite Process, and 2) the grant of the Auxiliary rights. The first issue is a substantial one. The parties dispute whether the License Agreement granted USPC a license of the Flowtite Process for no longer than 19 years, commensurate with the duration of the Royalty Period, or for an unlimited duration such that Flowtite effectively sold the entirety of its North American business to USPC.

As to the Auxiliary Rights, the parties agree that those rights terminate upon expiration of the Royalty period but dispute whether the Royalty Period has ended. Flowtite alleges that USPC failed to provide timely notice of renewal after the last 5-year extension ended on March 1, 2022, and the Royalty Period (and the agreement as a whole) has ended. USPC argues that Flowtite cannot strictly enforce the renewal notice deadline because time was not of the essence. The Court addresses these two issues in turn.

A. <u>Termination of the Entire Agreement and the License of the Flowtite Process</u>

Flowtite seeks a declaratory judgment stating that the entire License Agreement has terminated and that USCP no longer has any right to use the Flowtite Process. At bottom, the Parties debate whether the term of the License Agreement is coextensive with the term of the Royalty Period.

USPC contends that dismissal on this matter is appropriate because the

Agreement, by its plain terms, survives the expiration of the Royalty Period. USPC contends that the License Agreement and the Royalty Period have separately defined durations for separately defined rights: The Auxiliary Rights pertain to the Royalty Period, which lasts no longer than 19 years; whereas the License Agreement and the license of the Flowtite Process continue indefinitely regardless of whether USPC exercises the renewal options.

Flowtite contends that the term of the Agreement automatically expires or terminates at the end of the Royalty Period. Flowtite points out that the renewal options in Article III of the Agreement apply to the License Agreement as a whole. Flowtite notes that it received compensation solely in the form of royalty payments for a limited time.

In construing a contract under Texas law, courts must "ascertain and give effect to the parties' intentions as expressed in the writing itself."[26] Dismissal is inappropriate when a contract is ambiguous.[27] If a contract's language "can be given a certain or definite legal meaning or interpretation, then [the contract[ is not ambiguous" and can be construed "as a matter of law."[28]  But "if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent."[29]

Three contractual provisions support a perpetual grant of the Flowtite Process. First, the Agreement expressly grants USPC a license of the Flowtite Process "for an unlimited duration."[30] Second, the Auxiliary Rights apply "during the Period of Royalty

---

[26] *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) (citation omitted).
[27] *See Coker v. Coker,* 650 S.W.2d 391, 394-95 (Tex.1983).
[28] *Id.* at 393.
[29] *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003)).
[30] Rec. Doc. 1-4, p. 3.

Payments."[31] Such a specification is meaningless if the period of Royalty Payments is coextensive with the term of the overall Agreement. Third, the termination provision in Article VII does not contemplate that the Agreement will expire or terminate after a certain period of time.[32]

To complicate matters, however, the Agreement has an implied expiration date under Article III. Indeed, the renewal options in Article III apply to the Agreement as a whole, not just the Royalty Period.[33] Article III provides: "USCP shall have three (3) options of five (5) years each to extend the term of this *Agreement*. . . ."[34] The capitalized term "Agreement" is used throughout the contract to refer to the License Agreement in its entirety.[35]

Obviously, there is no need to renew an agreement that lasts for an indefinite period of time. That the renewal options apply to the entire Agreement strongly suggests that the Royalty Period is coextensive with the overall term of the Agreement and that the entire Agreement—including the license of process—expires when USPC fails to renew the Agreement or when the maximum renewal periods have run. In this regard, the termination provision in Article VII merely provides a mechanism to end the Agreement before its natural expiration date under Article III.

USCP's interpretation is further disfavored because it would ostensibly give rise to an unfair bargain. When possible, courts "will avoid . . . a construction which is unreasonable, inequitable, and oppressive."[36] Based on the plain terms of the agreement,

---

[31] *Id.*, p. 3-4.
[32] *Id.*, p. 7.
[33] Rec. Doc. 1-4, p. 4.
[34] *Id.* (emphasis added).
[35] *Id.*, p. 1 ("THIS AGREEMENT is made and entered into . . . . The following terms shall have the meaning prescribed to them as follows for purpose of this Agreement.").
[36] *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex.1987).

Flowtite received no consideration for its intellectual property beyond the primary 4-year royalty term.[37] The idea that Flowtite granted USCP a license in perpetuity in exchange for only four years of guaranteed royalty payments seems inequitable and contrary to common sense.

USPC asks this Court to consider the Asset Sale Agreement executed concurrently with the License Agreement and incorporated by reference therein.[38] According to USPC, the Asset Sales Agreement shows that USPC purchased the Flowtite name and technology along with other intellectual property for $1,000,000.[39]

The Court finds that the Asset Sale Agreement may be considered at the dismissal stage as it was fully incorporated by reference into the License Agreement.[40] "It is well established that documents, even unsigned documents, may be incorporated into a contract when the parties refer to the document in the contract."[41] "When a document is incorporated into another by reference, both instruments must be read and construed together."[42]

Problematically, however, the Asset Sale Agreement provides little clarity. The agreement was between USPC (through its predecessor in interest) and Amitech USA, LLC ("Amitech USA).[43] Flowtite was not a party to that agreement and did not receive any consideration or third-party benefit from that agreement.[44] By the plain terms of the

---

[37] Rec. Doc. 1-4, p. 4.
[38] *See* Rec. Doc. 1-4, p. 17.
[39] *See* Rec. Doc. 24-1, p. 1-2.
[40] Rec. Doc. 1-4, p. 17 ("[Flowtite], as an affiliate of Saudi Arabian Company ("Amiantit"), acknowledges that this Agreement is being signed pursuant to that certain Sale of Assets Agreement dated December 14, 2007 among Amitech USA, LLC, Amiantit, and KTI, Inc. ("Sale Agreement") which Sale Agreement, as amended, is incorporated herein by reference.").
[41] *St. David's Healthcare P'ship, LP v. Fuller*, 627 S.W.3d 707, 712 (Tex. App.—Austin 2021, pet. filed)
[42] *Id.*
[43] Rec. Doc. 24-1, p. 1.
[44] *Id.*, p. 1-25.

Agreement, the $1,000,000 in question was paid to Amitech USA, which is a sister corporation of Flowtite.[45] Ultimately, the plain terms of the Asset Sales Agreement and License Agreement show that Flowtite received consideration solely in the form of royalty payments for a limited time.

USCP contends that, "on the face of the Asset Sale Agreement, it was the parties' express intent to sell the entire FLOWTITE business in North America outright to Defendants" and Flowtite's interpretation "would require USCP to shut down the FLOWTITE business and cease using the FLOWTITE name and technology after nineteen years."[46] However, the Asset Sales Agreement only purports to sell the "*license rights* in trade names, trademarks, service marks, Flowtite and Meyer Polycrete polymer and Intellectual Property Rights (as defined herein), processes, formulas and trade secrets used by Amitech USA."[47] The Asset Sales Agreement does not specify the extent or duration of such license rights, apparently leaving those parameters to be ironed out by the License Agreement.

Ultimately, neither party has proposed an interpretation of the License Agreement that harmonizes its conflicting terms and gives effect to all provisions. The Agreement grants USPC a license of the Flowtite Process "for an unlimited duration."[48] However, the license of the Flowtite Process is subject to "the terms and conditions set forth in this Agreement," and under Article III, the License Agreement lasts no longer than 19 years. USPC's interpretation would have this Court rewrite Article III to apply only to the Royalty Period. On the other hand, Flowtite's interpretation would render the term "unlimited

---

[45] *Id.*, p. 2.
[46] Rec. Doc. 32, p. 7.
[47] Rec. Doc. 24-1, p. 1 (emphasis added).
[48] Rec. Doc. 1-4, p. 3.

duration" superfluous. The Court concludes, as a matter of law, that the Agreement is ambiguous as to whether the license of the Flowtite Process continues beyond the end of the Royalty Period. Dismissal on the matter is therefore inappropriate.

### B. Termination of the Royalty Period and Auxiliary Rights

Next, the parties dispute whether the Royalty Period has concluded. Flowtite seeks a declaratory judgment stating that the Royalty Period has ended and, consequently, that the Auxiliary Rights granted to USPC during the Royalty Period have terminated. Flowtite argues that the Royalty Period has terminated because USPC failed to provide timely notice of renewal after the last 5-year extension ended on March 1, 2022.[49] Flowtite alleges that USPC sent notice of renewal on June 6, 2022, nearly 200 days after the deadline specified in Article III.[50] In dispute, USPC argues that Flowtite cannot strictly enforce the renewal notice deadline because time was not of the essence.

Time is always of the essence in an option contract.[51] "If an option contract requires the option holder to give notice of his intent to exercise the option, he must timely give this notice; the failure to give it on time is fatal."[52] An option can be construed as either an offer or conditional contract.[53] If the option contract is construed as an offer, "it is open for a time limited, and no offer can be accepted after its lapse."[54] If construed as a conditional contract, "it contains the express condition that notice shall be given at a specified time" and "[s]uch an express condition should be enforced according to its

---

[49] Rec. Doc. 15, ¶ 18.
[50] Rec. Doc. 30, p. 13 n.54. The exact date of renewal is alleged in Flowtite's *Opposition* because USPC did not provide notice of renewal until after Flowtite filed its *Complaint.* Nevertheless, the *Complaint* sufficiently pleads USPC's failure to timely renew the Agreement. *See* Rec. Doc. 15, ¶ 18.
[51] *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *White v. Miller,* 518 S.W.2d 383, 386 (Tex.Civ.App.-Tyler 1974, writ dism'd).
[52] *Id*.
[53] *Ducc Realty Co. v. Cox,* 356 S.W.2d 807, 809 (Tex.Civ.App.-Waco 1962, no writ).
[54] *Id.*

terms."[55]

It follows that if USPC failed to meet the renewal notice deadline, the Royalty Period expired at the end of the most recent term, on March 1, 2022, and USPC no longer has any right to use the Auxiliary rights granted during the Royalty Period. Because Flowtite alleges that USCP did not provide timely notice of renewal, Flowtite has pled sufficient facts that, if true, would warrant declaratory relief regarding the termination of the Royalty Period and Auxiliary Rights. Dismissal on this matter is therefore inappropriate.

### IV. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[56] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, this day, March 28, 2023.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[55] *Id.*
[56] Rec. Doc. 21.