# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

AMIBLU TECHNOLOGY AS

VERSUS

U.S. COMPOSITE PIPE SOUTH AND
KEN M. THOMPSON, LLC

CIVIL ACTION

22-259-SDD-RLB

## RULING

Before the Court is the Motion to Cancel Jury Trial and Convert to Bench Trial filed by Plaintiff Amiblu Technology, AS ("Amiblu").[1] Defendant U.S. Composite Pipe South ("USCPS") opposes the Motion.[2] Amiblu filed a Reply,[3] and USCPS filed a Surreply.[4] For the reasons that follow, the Motion will be granted.

**I.  BACKGROUND**

The factual background of this case has been laid out in detail in prior Rulings.[5] The Court will provide a summary of the salient facts here. Amiblu owns certain intellectual property, know-how, and trade secrets related to the manufacturing of continuous wound glass reinforced plastic piping (the "Flowtite Process").[6] USCPS and Amiblu are parties to a Know-How and Intellectual Property License Agreement (the "License Agreement") whereby Amiblu, under its former name of "Flowtite," grants a license to USCPS as follows:

> [Flowtite] hereby grants to USCP[S] and USCP[S] hereby accepts, upon the terms and conditions set forth in this

---

[1] Rec. Doc. 120.
[2] Rec. Doc. 123.
[3] Rec. Doc. 130.
[4] Rec. Doc. 145.
[5] *See* Rec. Docs. 36, 68, 159.
[6] Rec. Doc. 15, ¶ 7.

>Agreement, for an unlimited duration, an exclusive licence [sic] of the Process under [Flowtite's] Intellectual Property and Know-How to manufacture, have made, use and sell the Products within the territory of the United States of America and Canada.[7]

The License Agreement requires USCPS to pay royalties to Amiblu on all "[p]roducts manufactured by USCP[S] as a result of th[e License] Agreement" through March 1, 2012, after which USCPS would have three consecutive renewal options to "extend the term of this Agreement" for five years "upon written notice of exercise of such option at least ninety (90) days prior to the expiration of the term, or extended term, hereof."[8]

In addition to the intellectual property, the License Agreement grants USCPS additional rights "during the Period of Royalty Payments" (the "Royalty Period").[9] These rights, referred to as the "Auxiliary Rights," include 1) authorization of USCPS to state on its products that it is manufacturing "under license from [Flowtite]" and to use "the relevant Trademarks and Copyrights of [Flowtite]," and 2) the right to receive from Amiblu any new additional know-how related to the Flowtite Process developed or acquired during the Royalty Period, which Amiblu has the duty to "promptly disclose and convey."[10]

Amiblu filed suit seeking declaratory judgment that all of USCPS's rights under the License Agreement expired due to USCPS's failure to renew the most recent term, which ended on March 1, 2022.[11] Amiblu alternatively alleged the License Agreement was

---

[7] Rec. Doc. 1-4, p. 3 (SEALED).
[8] *Id.* at p. 4 (SEALED).
[9] *Id.* at pp. 3–4 (SEALED).
[10] *Id.* (SEALED).
[11] Rec. Doc. 15, ¶ 18.

extinguished due to "failure of consideration."[12] Amiblu's Complaint prays for the following declaratory relief:

- "The term of the [License] Agreement has ended;"[13]

- USCPS no longer has "any further license or other rights, exclusive or otherwise, to use the Flowtite Process;"[14]

- USCPS no longer has "any further license or other rights, exclusive or otherwise, to use the Flowtite Mark or to state on its products or in commercial correspondence or literature that any of its products are manufactured under license from Flowtite;"[15]

- "Any obligation of [Amiblu] to provide know-how, assistance, training, or other access to information regarding any Flowtite Process or subsequent 'know-how' developed during the term of the Agreement ceased on March 1, 2022, and no further or ongoing obligation exists;"[16] and

- "[Amiblu] is the sole owner of all Patents, Trademarks, Copyrights, or other intellectual property rights as to the Flowtite Process and Flowtite Mark, and is free to license any or all such rights as it sees fit to any third party now that the term of the [License] Agreement has ended."[17]

USCPS filed a Counterclaim against Amiblu.[18] USCPS asserts that Amiblu breached the License Agreement by 1) restricting USCPS's access to know-how, in

---

[12] *Id.* at ¶ 24.
[13] *Id.* at ¶ 25.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Rec. Doc. 52.

violation of Amiblu's duty to "promptly disclose and convey" the know-how, and 2) improperly attempting to unilaterally terminate the License Agreement.[19] USCPS prays for injunctive relief and specific performance.[20]

Both parties later filed motions for partial summary judgment. USCPS's Motion sought a finding that as a matter of undisputed fact, the license for the Flowtite Process is for an "unlimited duration," meaning that USCPS's intellectual property rights continue beyond the end of the Royalty Period.[21] Amiblu's Motion sought: 1) dismissal of USCPS's Counterclaim for breach of the License Agreement; 2) entry of declaratory judgment finding that Amiblu's obligations under the License Agreement have been extinguished; and 3) dismissal of USCPS's affirmative defenses.[22] The Court granted USCPS's Motion for Partial Summary Judgment, finding that as a matter of undisputed fact, the parties intended the license to extend beyond the duration of the Royalty Period for an unlimited duration.[23] Amiblu's Motion for Partial Summary Judgment was granted in part and denied in part. Specifically, the Court granted summary dismissal of eight of USCPS's affirmative defenses but denied Amiblu's requests for entry of declaratory judgment that all of Amiblu's obligations under the License Agreement have been extinguished and for dismissal of USCPS's Counterclaim.[24]

---

[19] See Id. at ¶¶ 98–99. The Counterclaim also included antitrust claims under the Sherman Act and the Clayton Act, but the antitrust claims were dismissed upon motion by Amiblu. See Rec. Doc. 68.
[20] Rec. Doc. 52, ¶¶ 101, 102.
[21] Rec. Doc. 78-1, p. 8.
[22] Rec. Doc. 81-2, p. 1.
[23] Rec. Doc. 159, pp. 8–28. Parol evidence of intent was offered by USCPS because the Court previously found the License Agreement ambiguous as to its term. USCPS's summary judgment evidence of the intended duration of the agreement was undisputed.
[24] Id. at pp. 28–54.

While the parties' motions for partial summary judgment were pending, Amiblu filed the instant Motion seeking to convert the trial of this matter from a jury trial to a bench trial.[25] USCPS opposes the Motion and demands trial by jury.[26]

## II.  LAW AND ANALYSIS

USCPS filed a demand for trial by jury pursuant to Federal Rule of Civil Procedure ("Rule") 38(b).[27] According to Rule 39(a)(2), "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless … the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."[28]

The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.[29]

According to the Supreme Court, "Suits at common law" refers to "'suits in which *legal* rights are to be ascertained and determined' as opposed to 'equitable rights.'"[30] Courts apply a two-part test in determining whether an action will resolve legal rights such that a jury trial is warranted: "First, [the court] compare[s] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the court] examine[s] the remedy sought and determine[s] whether it is legal or

---

[25] Rec. Doc. 120.
[26] Rec. Doc. 123.
[27] Rec. Doc. 41.
[28] Fed. R. Civ. P. 39(a)(2).
[29] U.S. Const. amend. VII.
[30] *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 396 (5th Cir. 2024) (quoting *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (cleaned up)).

equitable in nature."[31] The second step – examining the nature of the remedy sought – is more important than the first.[32]

Amiblu initiated this lawsuit under the Declaratory Judgment Act. Declaratory relief "itself is neither legal nor equitable."[33] Because declaratory judgments did not exist at the time the Seventh Amendment was adopted, courts "look for an analogous cause of action that would have existed in the 18th century to determine whether the nature of a declaratory judgment action is legal or equitable."[34] In other words, courts "look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy."[35] Thus, "[i]f the underlying action is equitable then there is no right to a jury trial."[36]

Amiblu argues its declaratory judgment action is "most analogous to the traditional equitable action for specific performance" because "it seeks to enforce the provisions of the License Agreement requiring USCPS to renew the Agreement by particular deadlines."[37] USCPS, on the other hand, argues that "[w]ithout the Declaratory Judgment Act, this dispute would only have come before the Court as a breach of contract action with at least one party, and probably both, claiming money damages—a classic legal cause of action under the Seventh Amendment."[38]

The Court finds Amiblu's declaratory judgment action to be equitable in nature. Amiblu's Complaint does not contain any request for monetary relief (other than attorney

---

[31] *Id.* (quoting *Terry*, 494 U.S. at 564).
[32] *Terry*, 494 U.S. at 564.
[33] 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2313 (4th ed. 2025).
[34] *Ancor Holdings, L.P.*, 114 F.4th at 396 (citing *Terry*, 494 U.S. at 566).
[35] *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988).
[36] *Talent Tree Crystal, Inc. v. DRG, Inc.*, No. 1:04-CV-875, 2005 WL 8169098, at *2 (W.D. Mich. Aug. 11, 2005).
[37] Rec. Doc. 120-1, p. 5.
[38] Rec. Doc. 123, p. 15.

fees, as discussed *infra*). Instead, Amiblu seeks termination of rights granted to USCPS under the License Agreement due primarily to USCPS's untimely notice of renewal through enforcement of the contract's renewal deadlines. USCPS argues that without the Declaratory Judgment Act, Amiblu would have had to pursue a breach of contract action for monetary damages because "there is no claim for breach of contract without a loss."[39] However, as Amiblu points out and as worded by a Texas federal district court, "monetary relief is not invariably the objective of breach of contract claims. As long as there is injury from the breach, liability attaches under Texas law; the question whether that liability gives rise to the remedy of damages or some other remedy, such as specific performance, is a matter for the law of remedies."[40] Along the same lines, a New York district court explained:

> [W]hen a proceeding is equitable in nature or seeks only equitable relief, a jury trial is not required even though the proceeding is based on a contract or involves contract rights. Thus actions seeking specific performance of a contract, or seeking to enforce a contract by injunctive relief, being equitable, do not give rise to a right of jury trial even though issues as to the existence, validity and/or breach of a contract necessarily arise in such cases.[41]

Amiblu cites case law supporting its characterization of its action as one for specific performance. For example, in *7-Eleven inc. v. Puerto Rico-7 Inc.*, the plaintiff sought a declaratory judgment that a license agreement was "validly terminated by [the plaintiff] in accordance with its terms."[42] Despite the termination, the defendant-licensees continued

---

[39] *Id.* at p. 12.
[40] *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 859 (E.D. Tex. 2012).
[41] *Rosenman Colin Freund Lewis & Cohen v. Richard*, 656 F. Supp. 196, 199 (S.D.N.Y. 1987).
[42] *7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. CIV.A. 3:08-CV-0140B, 2009 WL 4723199, at *5 (N.D. Tex. Dec. 9, 2009).

to exercise their rights under the license agreement.[43] The plaintiff alleged that the post-termination exercise of rights by the defendants was a breach of the provisions of the license agreement requiring the defendants to discontinue such actions upon termination of the agreement.[44] The district court for the Northern District of Texas granted the plaintiff's request for "specific performance of the post-termination obligations," ordering the defendants to "immediately make any and all changes and alterations to their formerly licensed premises required to de-identify their stores and to return to [the plaintiff] all manuals and other confidential materials relating to the operation of 7–ELEVEN stores."[45]

Similarly here, Amiblu filed suit seeking declaration that USCPS's rights under the License Agreement terminated due to USCPS's failure to comply with the contractual renewal deadlines. No claim for monetary relief is asserted. Without the Declaratory Judgment Act, Amiblu likely would have sought specific performance rather than monetary damages because the relief Amiblu desires is termination of USCPS's rights and conduct.[46] Indeed, as USCPS itself explains in its Affidavit of Settlement Efforts, "neither party has, in their claims or counterclaims, focused on the recovery of money damages because the intellectual property rights have a value to both parties that is not easily quantified. This is why the parties are asking in this litigation for a determination of the parties' respective rights under the contracts and not for an award of money damages."[47] The nature of the relief sought is analogous to an equitable action for specific

---

[43] *Id.* at *6.
[44] *Id.* at *7.
[45] *Id.*
[46] *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2313 (quoting *James v. Pennsylvania Gen. Ins. Co.*, 349 F.2d 228, 230 (D.C. Cir. 1965)) (question is "whether an action in equity could be maintained if declaratory judgment were unavailable").
[47] Rec. Doc. 119, ¶ 3.

performance. "An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court."[48]

The same result follows with respect to USCPS's Counterclaim for breach of contract. USCPS specifically alleges in the Counterclaim that "[t]he recovery of money damages would not fully compensate USCPS," and specifically requests an injunction of Amiblu's conduct and specific performance of Amiblu's duties under the License Agreement.[49] This is an equitable action that does not warrant trial by jury.

Amiblu's assertion of "failure of consideration" in its Complaint as an alternative basis for termination of USCPS's rights does not change this conclusion. Amiblu does not seek monetary relief under this alternative theory. As Amiblu articulates in its Reply brief, it is "not asserted as a means to seek amounts past due, but as a means to declare the License Agreement ended for equitable reasons."[50] Because Amiblu only seeks the equitable remedy of rescission,[51] the failure of consideration theory does not trigger the right to a jury trial.

USCPS devotes most of its briefing to arguing that the parties' requests for attorney fees gives rise to a legal action triable by jury. The License Agreement provides for attorney fees as follows:

> <u>Legal Fees and Costs</u>. In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable

---

[48] *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 224 (3d Cir. 2009) (citing *Klein v. Shell Oil Co.*, 386 F.2d 659 (8th Cir.1967); 5 Moore's Federal Practice, ¶ 38.21 (2d ed.1979); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2309 (2d ed.1995)).
[49] Rec. Doc. 52, ¶¶ 101, 102.
[50] Rec. Doc. 130, p. 9.
[51] *See Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 611 (N.D. Tex. 2006) ("Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment.") (quoting *Martin v. Cadle Company*, 133 S.W.3d 897, 903 (Tex.App.—Dallas 2004, pet. denied)).

expenses, attorneys' fees and costs in addition to other such relief or remedies as may be awarded.[52]

In arguing the attorney fee requests in this case do not present a jury issue, Amiblu cites *Resolution Trust Corp. v. Marshall*, where the Fifth Circuit stated: "Since there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees."[53]

In opposition, USCPS contends that it is entitled to a jury trial because it seeks a determination of *liability* for attorney fees, as opposed to only a determination of the *amount* of attorney fees.[54] USCPS further argues that because this case involves both claims by Amiblu and counterclaims by USCPS, it is possible that there will be a "mixed verdict" whereby, "to some extent, both parties will 'prevail' and both parties will 'lose.'"[55] USCPS maintains it is entitled to a jury to identify the "prevailing party" based on the trial outcome, and "that question is inextricably intertwined with the jury's consideration of and weighing of the evidence presented on all other issues of contract interpretation, breach, and affirmative defenses to performance."[56]

USCPS relies substantially on the Second Circuit's decision in *McGuire v. Russell Miller, Inc.*, a case involving monetary damages.[57] There, the plaintiff contractually agreed to indemnify the defendants for "'reasonable attorneys' fees ... arising out of any claim, or the defense, settlement or compromise thereof, made with respect to' misrepresentations

---

[52] Rec. Doc. 1-4, p. 9 (SEALED).
[53] *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991) (citing *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir.1962)). *See also In re Abbott*, 117 F.4th 729, 732 (5th Cir. 2024) ("we have held that a claim for attorneys' fees does not generate a right to a jury trial under the Seventh Amendment.") (citing *Swofford v. B&W, Inc.*, 336 F.2d 406, 413 (5th Cir. 1964)).
[54] Rec. Doc. 123, p. 7. The parties agree that the amount of attorney fees is a determination for the Court rather than the jury.
[55] *Id.* at p. 8.
[56] *Id.*
[57] *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir. 1993).

by plaintiff in connection with [a] merger agreement."[58] The court held: "[W]hen a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees."[59] The *McGuire* court, disagreeing with the Fifth Circuit's intimation to the contrary in *Resolution Trust Corp. v. Marshall*, found that "an action to recover attorneys' fees pursuant to a contract presents traditional common-law contract issues which should be submitted to a jury—and which were properly submitted to the jury in this case—but [ ] the subsequent determination of the amount of attorneys' fees owed presents equitable issues of accounting which do not engage a Seventh Amendment right to a jury trial."[60]

In reply, Amiblu cites cases distinguishing *McGuire*. One such case is *Eastern Trading Co. v. Refco, Inc.*, where the Seventh Circuit found that "the issue of attorneys' fees was not a triable issue."[61] The court explained:

> The customer agreement obligated Eastern to reimburse Refco for the cost (including reasonable attorneys' fees) of collecting any unpaid debit in the account. There was no issue of entitlement to attorneys' fees to submit to the jury. Compare *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1313–14 (2d Cir.1993). Either Refco prevailed on its claim for the unpaid debit of $14 million and was therefore entitled to reasonable attorneys' fees, or Eastern prevailed and Refco therefore was entitled to no attorneys' fees. The issue of attorneys' fees (including amount) was therefore an issue to be resolved after the trial on the basis of the judgment entered at the trial…[62]

---

[58] *Id.* at 1315.
[59] *Id.* at 1313.
[60] *Id.* at 1314 (citing *Resolution Trust*, 939 F.2d at 279). The *McGuire* court did not disagree with the holding in *Resolution Trust* that the trial court properly determined the *amount* of attorney fees owed without submitting the question to the jury.
[61] *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 626 (7th Cir. 2000).
[62] *Id.* at 626–27.

Amiblu contends the above reasoning applies in this case because "[t]he License Agreement simply awards attorneys' fees to the 'prevailing party,'" such that "[t]his award involves no factual issues beyond who prevails in 'the judgment entered at trial.'"[63]

Amiblu next cites *Boston Scientific Corp. v. Ruiz*, where a Florida district court found that, "[d]espite the broad language of" the *McGuire* holding on which USCPS relies,

> the Court finds [*McGuire*] to be limited to claims for which attorney's fees pertain to the merits of the action *(e.g.,* the measure of damages)—not, as here, where they are simply a post-judgment award to the prevailing party. In binding precedent, the former Fifth Circuit drew this exact distinction between an "independent right of action for attorneys' fees upon which a suit could be maintained seeking a money judgment" and a "grant of attorneys' fees as an incident to the prior judicial determination of another cause of action." *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (5th Cir. 1962). … Whereas attorney's fees were part of the merits in *McGuire,* here it is incidental to the underlying breach of the employment agreement.[64]

The *Ruiz* court additionally cited another district court case stating that, "[f]or Seventh Amendment purposes there is a distinction between attorneys' fees as the measure of damages in an action in contract and attorneys' fees as a post-judgment remedy to be awarded to the prevailing party."[65]

Amiblu also relies on *Romero v. U.S. Bank Trust National Association*.[66] There, the plaintiff filed suit seeking a judgment quieting title to real estate and declaring that the defendant had no right to foreclose on the subject property.[67] The district court found these claims to be purely equitable.[68] However, the plaintiff argued that a jury trial was

---

[63] Rec. Doc. 130, p. 5.
[64] *Bos. Sci. Corp. v. Ruiz*, No. 05-21270-CIV, 2005 WL 8155008, at *2 (S.D. Fla. July 18, 2005).
[65] *Id.* (quoting *Continental Bank, N.A. v. Everett*, 861 F. Supp. 642, 645 (N.D. Ill. 1994)).
[66] *Romero v. U.S. Bank Tr. Nat'l Ass'n*, No. 3:24-CV-1175-S-BW, 2024 WL 4805376 (N.D. Tex. Nov. 14, 2024).
[67] *Id.* at *2.
[68] *Id.*

warranted because both parties sought attorney fees and costs.[69] Thus, the court considered "whether a request for attorneys' fees and costs converts an otherwise purely equitable claim into a legal claim entitling a claimant to a jury trial."[70] The court found there was no right to trial by jury, reasoning that "[a]ny claims asserted to recover attorneys' fees and costs … are intertwined with the equitable claims related to the Property."[71] In so finding, the court cited the Fifth Circuit's recognition in *Borst v. Chevron Corp.* that "a request for monetary recovery sounds in equity, and thus does not guarantee a jury trial, when it is restitutionary in nature or is intertwined with claims for injunctive relief."[72]

      The case law discussed above supports the conclusion that a jury trial is not required based on the requests for attorney fees in this case. The circumstances of this matter are more analogous to those in *Refco*, *Ruiz*, and *Romero* than to *McGuire* because 1) both parties seek equitable relief rather than monetary damages, and 2) the License Agreement grants attorney fees to the "prevailing party." USCPS attempts to distinguish the *Refco* case, reasoning that "there may be a mixed verdict here because there are both claims and counterclaims at issue. Thus, it is not clear which party will pay the other, … unlike in *Refco*."[73] However, USCPS cites no law supporting the proposition that a possible "mixed verdict" necessitates a trial by jury on equitable claims. Rather, when contractual attorney fees are provided for the "prevailing party," the cases indicate that liability for such fees is determined based on the judgment entered at trial, and a request

---

[69] *Id.*
[70] *Id.*
[71] *Id.* at *3.
[72] *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994).
[73] Rec. Doc. 145, pp. 3–4.

for the fees should not convert an otherwise purely equitable action into a legal action triable by jury.[74]

For the foregoing reasons, the Court finds the issues in this case do not entitle USCPS to a trial by jury. Accordingly, Amiblu's Motion will be granted.

USCPS additionally argues in its Opposition that in the event Amiblu's Motion is granted, the Court should empanel an advisory jury pursuant to Rule 39(c).[75] USCPS posits that "empaneling an advisory jury would protect all parties, as well as the Court, in the event that an appeal determines that USCPS was entitled to a jury, so that the matter does not have to be tried twice."[76] However, in *Parklane Hosiery Co., Inc. v. Shore*, the Supreme Court indicated that empanelment of an advisory jury does not satisfy the Seventh Amendment.[77] The Court in its discretion under Rule 39(c) declines to empanel an advisory jury.

---

[74] *Refco*, 229 F.3d at 626–627; *Ruiz*, 2005 WL 8155008, at *2–3; *Romero*, 2024 WL 4805376, at *2–3; *Borst*, 36 F.3d at 1324. See also *The Scotts Co. v. Cent. Garden & Pet Co.*, 256 F. Supp. 2d 734, 748 (S.D. Ohio 2003) ("a contractual fee-shifting provision for reimbursement to a successful party does not change the equitable nature of the relief sought.").
[75] Rec. Doc. 123, pp. 18–19.
[76] *Id.*
[77] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337 n.24 (1979) ("The petitioners did not have a right to a jury trial in the equitable injunctive action brought by the SEC. Moreover, an advisory jury, which might have only delayed and complicated that proceeding, would not in any event have been a Seventh Amendment jury."). See also *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 413 (6th Cir. 2012) ("when a party has the right to a jury determination on an issue under the Seventh Amendment, there is ample precedent that an advisory jury does not satisfy that requirement.") (citing *Parklane*, 439 U.S. at 337 n.24); *Fischer Imaging Corp. v. Gen. Elec. Co.*, 187 F.3d 1165, 1174 (10th Cir. 1999) ("An advisory jury is not the equivalent of a Seventh Amendment jury. … Therefore, we may not replace Fischer's Seventh Amendment right to a jury trial with an advisory jury's verdict.") (citing *Parklane*, 439 U.S. at 337 n.24; 8 James Wm. Moore, Moore's Federal Practice, § 39.40[4] (1999)); *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981) (advisory jury verdict may not be substituted when case should have been tried before a jury); *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1120 (10th Cir. 2003) (same).

### III. CONCLUSION

For the foregoing reasons, Amiblu's Motion to Cancel Jury Trial and Convert to Bench Trial[78] is GRANTED, and this matter shall proceed as a bench trial.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  1st  day of _____July_____, 2025.

_____*Shelly D. Dick*_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[78] Rec. Doc. 120.