UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AMIBLU TECHNOLOGY AS

VERSUS

U.S. COMPOSITE PIPE SOUTH AND
KEN M. THOMPSON, LLC

CIVIL ACTION

22-259-SDD-RLB

**RULING**

Before the Court are three motions *in limine*, two filed by Defendant U.S. Composite Pipe South ("USCPS"), and one filed by Plaintiff Amiblu Technology, AS ("Amiblu"). USCPS's Motions seek: 1) "to exclude [Amiblu] from presenting evidence or argument regarding USCPS' efforts (or lack of 'best efforts') to manufacture and/or promote Flowtite products in North America;"[1] and 2) "to exclude evidence relating to the Sales Agency Agreement entered into between USCPS and a sister company formed by a corporate predecessor."[2] Amiblu opposes both Motions.[3] USCPS filed reply briefs with respect to both Motions.[4]

Amiblu's Motion seeks exclusion of evidence or testimony concerning its "relationship or dealings … with Hobas U.S.A., Inc."[5] USCPS filed an Opposition,[6] and Amiblu filed a Reply.[7]

For the reasons that follow, the Motions will be denied.

---

[1] Rec. Doc. 134.
[2] Rec. Doc. 133.
[3] Rec. Docs. 153, 157.
[4] Rec. Docs. 171,169.
[5] Rec. Doc. 131.
[6] Rec. Doc. 154.
[7] Rec. Doc. 172.

I.    BACKGROUND[8]

This case arises from a Know-How and Intellectual Property License Agreement (the "License Agreement") between Amiblu (under its former name, "Flowtite") and USCPS in connection with intellectual property and know-how related to the manufacturing of glass reinforced plastic pipe (the "Flowtite Process"). The License Agreement provides:

> [Flowtite] hereby grants to USCP[S] and USCP[S] hereby accepts, upon the terms and conditions set forth in this Agreement, for an unlimited duration, an exclusive licence [sic] of the Process under [Flowtite's] Intellectual Property and Know-How to manufacture, have made, use and sell the Products within the territory of the United States of America and Canada.[9]

The License Agreement requires USCPS to pay royalties to Amiblu on all "[p]roducts manufactured by USCP[S] as a result of th[e License] Agreement" through March 1, 2012, after which USCPS would have three consecutive renewal options to "extend the term of this Agreement" for five years "upon written notice of exercise of such option at least ninety (90) days prior to the expiration of the term, or extended term, hereof."[10]

In addition to the intellectual property, the License Agreement grants USCPS additional rights "during the Period of Royalty Payments" (the "Royalty Period").[11] These rights, referred to as the "Auxiliary Rights," include 1) authorization of USCPS to state on its products that it is manufacturing "under license from [Flowtite]" and to use "the relevant

---

[8] The factual background of this case has been set forth in detail in prior Rulings (see Rec. Docs. 36, 68, 159) and need not be repeated in full for present purposes.
[9] Rec. Doc. 159, p. 2. It is undisputed that the License Agreement is governed by Texas law.
[10] Id.
[11] Id.

Trademarks and Copyrights of [Flowtite]," and 2) the right to receive from Amiblu any new additional know-how related to the Flowtite Process developed or acquired during the Royalty Period, which Amiblu has the duty to "promptly disclose and convey."[12]

Amiblu initiated this lawsuit seeking a judgment declaring that:

- "The term of the [License] Agreement has ended;"[13]

- USCPS no longer has "any further license or other rights, exclusive or otherwise, to use the Flowtite Process;"[14]

- USCPS no longer has "any further license or other rights, exclusive or otherwise, to use the Flowtite Mark or to state on its products or in commercial correspondence or literature that any of its products are manufactured under license from Flowtite;"[15]

- "Any obligation of [Amiblu] to provide know-how, assistance, training, or other access to information regarding any Flowtite Process or subsequent 'know-how' developed during the term of the Agreement ceased on March 1, 2022, and no further or ongoing obligation exists;"[16] and

- "[Amiblu] is the sole owner of all Patents, Trademarks, Copyrights, or other intellectual property rights as to the Flowtite Process and Flowtite Mark, and is free to license any or all such rights as it sees fit to any third party now that the term of the [License] Agreement has ended."[17]

Amiblu's Complaint sets forth two overarching theories: 1) that the License Agreement

---

[12] *Id.* at pp. 2–3.
[13] Rec. Doc. 15, ¶ 25.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

and all of USCPS's rights thereunder expired due to USCPS's failure submit a timely notice of renewal;[18] or, alternatively, 2) that there was a failure of consideration under the License Agreement due to USCPS's "failure to use its best efforts (or, more recently on information and belief, any efforts) to effectively utilize the Flowtite Process and Flowtite Mark to produce, market, and sell the resulting products in the United States and Canada such that royalty revenue would be generated."[19]

USCPS subsequently filed a Counterclaim against Amiblu.[20] In the Counterclaim, USCPS asserts that Amiblu breached the License Agreement by 1) restricting USCPS from accessing know-how, and 2) improperly attempting to unilaterally terminate the License Agreement.[21]

Both parties filed Motions for Partial Summary Judgment. USCPS's Motion sought a finding that as a matter of undisputed fact, the License Agreement grants USCPS a license of the Flowtite Process for an "unlimited duration," meaning that USCPS's intellectual property rights continue beyond the end of the Royalty Period.[22] The Court granted USCPS's Motion for Partial Summary Judgment, finding based on USCPS's unrefuted summary judgment evidence that "the parties intended the license to extend beyond the duration of the Royalty Period for an unlimited duration."[23]

Amiblu's Motion for Partial Summary Judgment sought three forms of relief: 1) dismissal of USCPS's Counterclaim for breach of the License Agreement; 2) entry of

---

[18] *Id.* at ¶ 18.
[19] *Id.* at ¶ 24.
[20] Rec. Doc. 52.
[21] *See id.* at ¶¶ 98–99. The Counterclaim also included antitrust claims against Amiblu under the Sherman Act and the Clayton Act, but those claims were dismissed pursuant to Rule 12(b)(6) on motion by Amiblu. *See* Rec. Doc. 68, p. 19.
[22] Rec. Doc. 78-1, p. 8.
[23] Rec. Doc. 159, p. 28. Parol evidence was admissible because, in a prior Ruling, the Court found the contractual language regarding the duration of the license ambiguous. *See* Rec. Doc. 36, pp. 5–10.

declaratory judgment finding that Amiblu's obligations under the License Agreement have been extinguished; and 3) dismissal of USCPS's affirmative defenses.[24] In arguing for dismissal of USCPS's Counterclaim, Amiblu asserted that the Auxiliary Rights upon which the Counterclaim rests expired. Amiblu argued the Auxiliary Rights expired for three reasons: 1) USCPS failed to submit a timely notice of renewal; 2) "lack of discernible damages;" and 3) failure of consideration.[25] The Court found that Amiblu established as a matter of undisputed fact that USCPS failed to submit a notice of renewal by the deadline of March 1, 2022.[26] Therefore, the Auxiliary Rights ended on that date.[27] However, this finding did not result in dismissal of the Counterclaim because Amiblu did not address USCPS's contention that Amiblu breached the License Agreement *prior* to the expiration of the Auxiliary Rights.[28] Thus, USCPS's Counterclaim remains pending to the extent USCPS seeks specific performance due to Amiblu's alleged failure to disclose and convey know-how as it existed up until the Auxiliary Rights ended in 2022. The Court rejected Amiblu's alternative theories for dismissal of the Counterclaim. The "lack of discernible damages" argument failed because it did not defeat USCPS's potential entitlement to the equitable remedy of specific performance.[29] The "failure of consideration" argument was unsuccessful because Amiblu argued that the Texas Uniform Commercial Code was the purported source of USCPS's duty to use "best

---

[24] Rec. Doc. 81-2, p. 1.
[25] *Id.* at pp. 5–10.
[26] Rec. Doc. 159, p. 47.
[27] *Id.* As mentioned, the Auxiliary Rights include authorization of USCPS to state on its products that it is manufacturing "under license from [Flowtite]" and to use "the relevant Trademarks and Copyrights of [Flowtite]," and the right to receive from Amiblu any new additional know-how related to the Flowtite Process developed or acquired during the Royalty Period, which Amiblu has the duty to "promptly disclose and convey." *Id.* at pp. 2–3.
[28] *See* Rec. Doc. 52, ¶ 73.
[29] Rec. Doc. 159, pp. 48–49.

efforts," which the Court found to be inapplicable as a matter of law to the License Agreement.[30]

With respect to Amiblu's second item of relief requested in its Partial Summary Judgment motion, Amiblu argued that it was entitled to a declaratory judgment finding that the entire License Agreement, including the grant of the license, had ended for three alternative reasons: 1) the duration of USCPS's license is coterminous with the Royalty Period and Auxiliary Rights; 2) a perpetual license would be terminable at will under Texas law; and 3) "lack of consideration."[31] The Court rejected all three of these theories.

The three Motions *in Limine* currently under consideration were filed after the parties filed the Motions for Partial Summary Judgment, but before the Court's Ruling on the Motions.

## II. ANALYSIS

### A. USCPS's Motion to Exclude Evidence and Argument Related to "Best Efforts"

USCPS seeks to prohibit Amiblu "from presenting evidence or argument regarding USCPS'[s] efforts (or lack of 'best efforts') to manufacture and/or promote Flowtite products in North America."[32] USCPS argues such evidence is irrelevant because the License Agreement does not impose any such obligation to use "best efforts," and because no such obligation is implied by the law.[33]

In its Opposition, Amiblu asserts that its "best efforts" argument is relevant to its alternative claim for failure of consideration. Amiblu argues that USCPS did not seek

---

[30] *Id.* at pp. 49–51.
[31] Under Texas law, "lack of consideration" is distinct from "failure of consideration." *See* Rec. Doc. 159, pp. 49–50 (quoting *Belew v. Rector*, 202 S.W.3d 849, 854 n.4 (Tex. App. 2006)).
[32] Rec. Doc. 134-1.
[33] *Id.*

dismissal of the failure-of-consideration claim in its Motion for Partial Summary Judgment, thus the claim remains a triable issue unless the Court dismisses the claim *sua sponte*.[34] Amiblu also argues that it is improper for USCPS to utilize a motion *in limine* to argue the overall merits of the failure-of-consideration claim.[35] Amiblu points to other legal support for its "best efforts" theory aside from the Texas Uniform Commercial Code (which was the only purported source of the obligation of best efforts argued by Amiblu in seeking summary dismissal of USCPS's Counterclaim).[36]

After the Court issued its Ruling on the Motions for Partial Summary Judgment, USCPS filed its Reply on the Motion *in Limine*.[37] Based on the Court's finding that the Texas UCC is inapplicable to the License Agreement, USCPS argues that Amiblu's "best efforts" theory has been rejected as a matter of law and is therefore irrelevant.[38] Amiblu disagrees, arguing in its Trial Brief that although the Court rejected the application of the Texas UCC, it did so in the context of addressing Amiblu's Motion for Partial Summary Judgment.[39] The viability of the failure-of-consideration claim was not challenged by USCPS in its dispositive motion.[40]

The Court finds that the "best efforts" issue remains live for trial. USCPS's Motion for Partial Summary Judgment did not seek dismissal of Amiblu's failure-of-consideration claim. The only context in which the Court has addressed the "best efforts" / "failure of consideration" issue was in ruling upon Amiblu's motion for summary dismissal of USCPS's Counterclaim. The Court found the "best efforts" duty in the Texas UCC

---

[34] Rec. Doc. 153, p. 2.
[35] *Id.* at pp. 4–7.
[36] *Id.* at pp. 7–9.
[37] Rec. Doc. 171.
[38] *Id.* at p. 1.
[39] Rec. Doc. 181, p. 10.
[40] *Id.*

inapplicable, but the Court did not have occasion to otherwise rule on the merits of Amiblu's claim for failure of consideration. Amiblu has pointed to additional legal and factual arguments for the existence of a "best efforts" obligation, and the Court's prior Ruling did not foreclose these arguments. USCPS's Motion *in Limine* to exclude evidence and argument of an alleged "best efforts" duty is denied. Objections are reserved to the time of trial.

### B. USCPS's Motion to Exclude Evidence Relating to the Sales Agency Agreement

USCPS's second Motion *in Limine* seeks to exclude evidence relating to a "Sales Agency Agreement," "whereby USCPS named a corporate affiliate, TPG Pressure, Inc. ["TPG"], as its 'exclusive sales agent' of the Flowtite products."[41] It argues the Sales Agency Agreement is irrelevant to any claims at issue because it is an intragroup agreement that merely "assigns certain rights granted USCPS to a corporate affiliate."[42] USCPS also argues that the Sales Agency Agreement is expressly permitted by the License Agreement.[43]

In opposition, Amiblu argues the Sales Agency Agreement is relevant to its failure-of-consideration claim.[44] In short, Amiblu posits that USCPS assigned its Flowtite-related rights to TPG, in exchange for a monthly payment, in order to avoid having to pay royalties to Amiblu.[45]

The Court finds that USCPS has not established at this stage that the Sales Agency Agreement is entirely irrelevant. As discussed, Amiblu's failure-of-consideration

---

[41] Rec. Doc. 133-1, pp. 2–3.
[42] *Id.* at p. 3.
[43] *Id.*
[44] Rec. Doc. 157.
[45] *Id.*

claim remains pending, and this claim involves USCPS's alleged failure to make adequate efforts to manufacture and sell products to generate royalties. USCPS's designation of an "exclusive sales agent" would be potentially relevant to the presentation of this claim. Accordingly, the Court denies USCPS's Motion *in Limine* to exclude the Sales Agency Agreement. Objections are reserved to the time of trial.

### C. Amiblu's Motion to Exclude Evidence Relating to its Relationship with Hobas U.S.A.

Hobas U.S.A. ("Hobas") is a competitor of USCPS in the glass reinforced plastic pipe ("GRP") market.[46] The parent companies of Amiblu and Hobas merged in 2017.[47] Amiblu seeks to exclude any evidence concerning its relationship or dealings with Hobas as irrelevant.[48]

USCPS seeks to present evidence showing that Amiblu has provided substantial assistance to Hobas.[49] Specifically, USCPS explains that "Hobas USA became a direct licensee of Amiblu [ ], which both provided technical support to and received royalties from Hobas USA on GRP Pipe sold in the United States."[50] USCPS argues Hobas is its top competitor, and that Amiblu's assistance of Hobas is "the main reason USCPS has not won more projects."[51] USCPS argues this evidence is relevant to its defense against Amiblu's "best efforts" theory because Amiblu "is actively assisting Hobas USA to defeat USCPS, to win competitive bids against USCPS, and to grow Hobas USA's market share at USCPS's expense."[52]

---

[46] Rec. Doc. 68, p. 2.
[47] *Id.*
[48] Rec. Doc. 131-1.
[49] Rec. Doc. 154, p. 6.
[50] *Id.* at p. 10.
[51] *Id.* at p. 6.
[52] *Id.*

The Court will deny Amiblu's Motion *in Limine*. Amiblu plans to argue that USCPS has generated insufficient royalties. USCPS plans to rebut that argument based on "challenges USCPS has faced in winning a bigger market share for Flowtite pipe," including Amiblu's alleged dealings with Hobas.[53] This information is potentially relevant to an evaluation of USCPS's efforts under the License Agreement. The pretrial motion to exclude this evidence is denied. Objections are reserved to the time of trial.

### III.   CONCLUSION

For the foregoing reasons,

USCPS's Motion *in Limine* to Exclude Evidence Relating to the Sales Agency Agreement[54] is DENIED.

USCPS's Motion *in Limine* to Exclude or Argument Relating to Best Efforts to Manufacture and/or Promote Flowtite Products[55] is DENIED.

Amiblu's Motion *in Limine* to Exclude Evidence or Testimony About Any Relationship or Dealings with Hobas[56] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 18th day of _____July_____, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[53] *Id.* at p. 7.
[54] Rec. Doc. 133.
[55] Rec. Doc. 134.
[56] Rec. Doc. 131.