**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

AMIBLU TECHNOLOGY AS

VERSUS

U.S. COMPOSITE PIPE SOUTH, LLC

CIVIL ACTION

22-259-SDD-RLB

**RULING**

Before the Court is the Motion to Stay Execution of Judgment Pending Appeal filed by Plaintiff, Amiblu Technology AS ("Amiblu").[1] Defendant, U.S. Composite Pipe South, LLC ("USCPS"), opposes the Motion.[2] Amiblu filed a Reply.[3] For the reasons that follow, the Motion will be granted.

## I.    BACKGROUND

This contractual dispute came before the Court for a bench trial on July 28 through July 29, 2025. Relevant here, USCPS asserted a Counterclaim seeking specific performance of Amiblu's obligation to provide USCPS with certain proprietary information pursuant to a Know-How and Intellectual Property License Agreement (the "License Agreement"). On March 30, 2026, the Court entered its Findings of Fact and Conclusions of Law.[4] The Court partially granted USCPS's Counterclaim for specific performance. The Court's Final Judgment provides as follows, in pertinent part:

> Within thirty days of the entry of this Judgment, Amiblu is hereby ordered to provide USCPS with full and indefinite access to the Flowtite Know-How. Amiblu is hereby further ordered to indefinitely reinstate USCPS's full access to any components of the Know-How to which USCPS lost access,

---

[1] Rec. Doc. 231.
[2] Rec. Doc. 235.
[3] Rec. Doc. 236-3.
[4] Rec. Doc. 226.

specifically including but not limited to the fittings interface and Know-How relating to FRP larger than 2,400 millimeters.[5]

Amiblu moves for a stay of execution of the Judgment pending appeal to the United States Court of Appeals for the Fifth Circuit.[6] USCPS opposes the Motion.[7]

## II.    LAW AND ANALYSIS

### A.  Legal Standards

Pursuant to the Supreme Court's decision in *Nken v. Holder*, courts consider four factors on a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[8] The movant bears the burden of proof on these four factors.[9] "A stay 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'"[10] Further, although the decision to grant relief under Federal Rule of Civil Procedure 62(c) is within the district court's discretion, "the stay of an equitable order is an extraordinary device which should be granted sparingly."[11]

### B.  Parties' Arguments

#### 1.  Factor 1: Likelihood of Success on the Merits

Amiblu owns certain intellectual property, know-how, and trade secrets related to the manufacturing of a type plastic piping known as "FRP" (the "Flowtite Process").[12]

---

[5] Rec. Doc. 227.
[6] Rec. Doc. 231.
[7] Rec. Doc. 235.
[8] *Nken v. Holder*, 556 U.S. 418, 426 (2009).
[9] *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992).
[10] *Texas v. U.S.*, 787 F.3d 733, 747 (5th Cir. 2015).
[11] *United States v. Louisiana*, 815 F.Supp. 947, 948 (E.D. La. 1993).
[12] Rec. Doc. 226, ¶ 7.

Under the License Agreement, Amiblu grants USCPS, "for an unlimited duration, an exclusive" license of the Flowtite Process to "manufacture, have made, use and sell" FRP within the United States and Canada.[13]

Both parties filed motions for summary judgment. USCPS sought a summary judgment finding that through the License Agreement, the parties intended for USCPS to receive a perpetual license to the Flowtite Process. Amiblu disagreed, arguing the license was limited in duration based on other terms in the License Agreement. Amiblu further argued that if the license were interpreted to be perpetual, it would be terminable at will under Texas law. The Court granted USCPS's motion, finding that the License Agreement grants USCPS a license of perpetual duration.[14] The Court rejected Amiblu's terminable-at-will theory, but certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b).[15] The Fifth Circuit declined Amiblu's motion for leave to file the appeal.[16]

In its Motion to Stay, Amiblu argues it has a strong likelihood of success on appeal in showing that USCPS's perpetual license is terminable at will under Texas law.[17] Amiblu points out that on summary judgment, the Court certified this legal issue for interlocutory appeal, which entailed a finding that "there is substantial ground for difference of opinion with respect to whether a licensor's agreement to grant an exclusive license" is terminable at will.[18] With regard to the merits of its position, Amiblu reiterates the argument it made on summary judgment: in summary, that an exclusive license subjects the licensor to

---

[13] *Id.* at ¶ 18.
[14] Rec. Doc. 159, pp. 1–28.
[15] *Id.* at pp. 29–41.
[16] *Amiblu Tech. A.S. v. U.S. Composite Pipe S., L.L.C.*, No. 25-90013 (5th Cir. June 23, 2025).
[17] Rec. Doc. 231-1, pp. 3–6.
[18] Rec. Doc. 159, p. 40.

"continuing obligations" such that a perpetual exclusive license is terminable at the will of either party.[19]

USCPS argues that Amiblu has made no showing of likelihood of success on the merits. USCPS points out that the Fifth Circuit rejected the interlocutory appeal, finding that "the certified question was not controlling, and the appeal would not materially advance the ultimate termination of the litigation."[20] USCPS also argues that the standard for a stay is stricter than the standard for certification for interlocutory appeal such that § 1292(b) certification should not be equated with likelihood of success on the merits on a motion to stay.[21] With respect to the merits of Amiblu's legal argument, USCPS argues in summary: 1) there is no case that has ever found that a perpetual, exclusive license is *per se* terminable at will, especially where (as here) the parties intended to grant a perpetual license; 2) the License Agreement does not impose continuing obligations on Amiblu; and 3) even if the License Agreement was terminable at will, Amiblu never sent any notice of termination, never relied on any right to terminate at will, nor ever pled the right to terminate at will.[22]

### 2. Factor 2: Irreparable Injury to Amiblu Absent Stay

Amiblu argues it will be irreparably harmed absent a stay if it has to disclose Know-How to USCPS and the Fifth Circuit later reverses this Court's ruling.[23] Amiblu argues that the Know-How is confidential and proprietary, and that it will be "irretrievably removed from Amiblu's control" without the stay.[24] Amiblu cites cases supporting the proposition

---

[19] Rec. Doc. 231-1, pp. 4–6.
[20] *Amiblu Tech. A.S. v. U.S. Composite Pipe S., L.L.C.*, No. 25-90013 (5th Cir. June 23, 2025).
[21] USCPS cites *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 418 (M.D. La. 2020) (rejecting the argument that a stay is impliedly warranted if the Court grants certification for interlocutory appeal).
[22] Rec. Doc. 235, pp. 6–10.
[23] Rec. Doc. 231-1, pp. 6–7.
[24] *Id.*

that irreparable harm may result from "'an erroneous forced disclosure of confidential information' because a court cannot 'restore confidentiality to documents' on direct appeal, long after their disclosure."[25]

USCPS argues there is no basis for any concern that USCPS will not return the Know-How to Amiblu if this Court's order is reversed on appeal.[26] USCPS points out that Amiblu has been voluntarily providing USCPS with Know-How since 2008, including through the four years that this litigation has been ongoing.[27] USCPS also distinguishes the case law cited by Amiblu regarding irreparable injury resulting from the disclosure of confidential information. It argues that in those cases, the parties seeking the information had never seen it before, whereas in this case, USCPS has had access to most of the Know-How for years, and still retains that access to this day.[28]

### 3. Factor 3: Whether Stay will Substantially Injury USCPS

Amiblu argues that USCPS will suffer no harm by the issuance of the stay because "it will maintain the *status quo* that the parties have held for four (4) years."[29] More specifically, Amiblu says that if the stay is issued, USCPS will retain its access to the parts of the Know-How that it has had since the litigation began in 2022.[30] The stay would only prevent Amiblu's conveyance of the parts of the Know-How which remain confidential—as stated in the Judgment, this includes "the fittings interface and Know-How relating to

---

[25] *In re FirstEnergy Corp.*, No. 24-3654, 2025 WL 2335978, at *3 (6th Cir. Aug. 7, 2025) (quoting *In re Profs. Direct Ins. Co.,* 578 F.3d 432, 438 (6th Cir. 2009)) (citing *In re Perrigo Co.,* 128 F.3d 430, 437 (6th Cir. 1997)). Amiblu also cites *In re City of Chester, Pennsylvania*, No. 25-2136-MRP, 2026 WL 607528, at *9 (E.D. Pa. Mar. 3, 2026) ("Once sensitive information is disclosed, it cannot be effectively retrieved, and the resulting consequences cannot be fully undone on appeal.").

[26] Rec. Doc. 235, pp. 10–11.

[27] *Id.*

[28] *Id.*

[29] Rec. Doc. 231-1, pp. 7–8.

[30] *Id.*

FRP larger than 2,400 millimeters."[31] Amiblu additionally argues that USCPS has been unable to offer any evidence of monetary damages throughout the litigation.[32]

USCPS asserts that a stay would alter the *status quo*, arguing that it "would give Amiblu the right to cut off USCPS's access to the Know-How at any time and to exercise that right with the Court's express approval."[33] This would disrupt USCPS's operations, as Know-How is used for many aspects of USCPS's business.[34] Additionally, USCPS argues that the reason it did not pursue or identify monetary damages was because they were not quantifiable, which was the reason it sought specific performance instead.[35]

### 4. Factor 4: Public Interest

Amiblu simply argues that "there is no evidence that the public interest will be harmed by the issuance of a stay."[36]

USCPS argues that the stay would deprive the United States and Canada of FRP because Amiblu could cut off USCPS's access to all of the Know-How, which would effectively block USCPS's ability to exercise its exclusive license.[37]

### C. Discussion

### 1. Factor 1: Likelihood of Success on the Merits

"Likelihood of success" is "a prerequisite in the usual case" where a party is seeking a stay pending appeal.[38] But notably, the Fifth Circuit has explained that if the "balance of equities" (i.e., the other three factors) weighs "heavily" in favor of granting a

---

[31] Rec. Doc. 227.
[32] Rec. Doc. 231-1, pp. 7–8.
[33] Rec. Doc. 235, p. 13–15.
[34] *Id.*
[35] *Id.*
[36] Rec. Doc. 231-1, p. 9.
[37] Rec. Doc. 235, pp. 15–16.
[38] *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 857 (5th Cir. 1982).

stay, then "the movant need only present a substantial case on the merits when a serious legal question is involved," as opposed to a "probability" of success on the merits.[39] On the flip side, if "the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal."[40] Said another way, "[o]nly 'if the balance of equities (i.e. consideration of the other three factors) is ... heavily tilted in the movant's favor' will we issue a stay in [the absence of likelihood of success on the merits], and, even then, the issue must be one with patent substantial merit."[41]

In its summary judgment Ruling, the Court found that a substantial ground for difference of opinion exists with respect to the legal issue which Amiblu seeks to appeal. After extensive analysis of applicable Fifth Circuit case law, the Court ultimately ruled against Amiblu on the issue. For all the reasons discussed in the summary judgment Ruling, the Court reached the opinion that the License Agreement is not terminable at will.[42] But as recognized in that prior Ruling, Amiblu's position has substantial merit. The Court now proceeds to consider whether the balance of equities tilts heavily in favor of the stay.

### 2. Factors 2 and 3: Irreparable Injury to Amiblu Absent Stay, and Whether Stay will Substantially Injury USCPS

The Court finds that both of these factors weigh strongly in favor of the stay. USCPS spends most of its briefing on these issues arguing that Amiblu will cut off its

---

[39] *Ruiz v. Estelle (Ruiz I)*, 650 F.2d 555, 565 (5th Cir. 1981).
[40] *Id.*
[41] *Ruiz II*, 666 F.2d at 857.
[42] Rec. Doc. 159, pp. 29–41.

access to all of the Know-How, including the information that USCPS has had access to all throughout the litigation, if the stay is granted. But neither the evidence introduced at trial nor Amiblu's Motion to Stay supports this. As USCPS repeatedly acknowledges, it has had access to the bulk of the Know-How for years up to and including through trial.[43] In USCPS's words, "the Final Judgment compels Amiblu to provide USCPS with additional access to those *limited remaining pieces* of Know-How to which Amiblu wrongfully has denied USCPS access—e.g., Know-How for larger diameter pipes (over 2,400 mm) and the Manufacturer Specifications Tool in the Fittings Interface."[44] In its brief on the Motion to Stay, Amiblu indicates that the stay would maintain the *status quo* because "USCPS retains access to certain Know-How via the portal and has since 2022[.]"[45] Amiblu is more explicit in its Reply: "if the Motion is granted, Amiblu will sustain USCPS's pre-judgment access to the Know-How to which they have had access for the past four years …, but not *additional* Know-How contemplated by the Judgment."[46]

With respect to the "limited remaining pieces of Know-How" to which USCPS currently lacks access, the Court finds that Amiblu maintains an interest in keeping that information confidential and could suffer irreparable harm if this Court's Judgment is reversed. The Court finds the reasoning of the cases cited by Amiblu applicable because Amiblu seeks to maintain the confidentiality of information, the forced disclosure of which

---

[43] Rec. Doc. 235, pp. 1, 10–11, 13 n.45. USCPS says that the Judgment "does not even materially expand the scope of Amiblu's disclosure obligations beyond what Amiblu has for years voluntarily provided even up to filing its current Motion."
[44] *Id.* at p. 11 (emphasis added).
[45] Rec. Doc. 231-1, p. 8.
[46] Rec. Doc. 236-3, p. 2.

cannot be effectively undone later.[47] This risk of irreparable injury weighs heavily in favor of the stay.

The Court finds any risk of injury to USCPS to be minimal. Again, USCPS's argument on this factor presumes that Amiblu will revoke USCPS's access to all of the Know-How if the stay is granted. As explained, the Court finds this unsupported, as Amiblu seeks to stay "the disclosure of Know-How compelled by the Final Judgment."[48] In other words, Amiblu only seeks to maintain the confidentiality of the information that remains undisclosed, which includes the particular items mentioned in the Judgment.[49] As the Court stated in its Conclusions of Law, "[t]o the extent that the online portal or parts thereof is still available to USCPS as a Flowtite licensee, Amiblu is not in breach of its obligations as to that information."[50] The Judgment does not order Amiblu to provide USCPS with Know-How that it already has access to. Thus, a stay of that Judgment would not allow Amiblu to "cut off" USCPS's access to any information it currently possesses. Any injury to USCPS would come from what it describes to be the "limited remaining pieces of Know-How" being unavailable during the pendency of the appeal. Accordingly, the Court finds that the third factor weighs in favor of the stay.

---

[47] *In re FirstEnergy Corp.*, 2025 WL 2335978, at *3 (quoting *In re Profs. Direct Ins. Co.,* 578 F.3d at 438) (citing *In re Perrigo Co.,* 128 F.3d at 437); *In re City of Chester, Pennsylvania*, 2026 WL 607528, at *9.
[48] Rec. Doc. 231-1, p. 8.
[49] Rec. Doc. 227.
[50] Rec. Doc. 226, ¶ 9.

### 3. Factor 4: Public Interest

Neither party offers convincing argument on the stay's effect on the public interest. The Court finds the factor to be neutral because only the parties to this lawsuit would be substantially impacted by the stay.[51]

### D. Bond

Under Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from a … final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." The Court finds it unnecessary to impose a monetary bond here. USCPS acknowledges that it possesses most of the Know-How already such that the Judgment "does not even materially expand the scope of Amiblu's disclosure obligations beyond what Amiblu has for years voluntarily provided even up to filing its current Motion."[52] Due to the limited scope of the stay and the assurances of Amiblu that USCPS will maintain its access to the Know-How it currently possesses, any potential injury to USCPS is minimal. Further, the Court lacks any meaningful way of measuring USCPS's potential damages, and the Court disagrees with USCPS's argument that the entire Asset Sale Agreement price is an appropriate benchmark. Accordingly, the Court waives any monetary bond requirement.[53]

---

[51] *Osborne v. Rocket Mortg., LLC*, No. 2:24-CV-101-TBM-RPM, 2026 WL 381216, at *2 (S.D. Miss. Feb. 11, 2026) (citing *Belknap v. Bank of Am., N.A.*, G–12–198, 2012 WL 3150271, at *3 (S.D. Tex. Aug. 1, 2012)).
[52] Rec. Doc. 235, p. 11.
[53] *See Dominick v. Barrere*, No. CV 12-497-JJB-RLB, 2015 WL 7756140, at *2–3 (M.D. La. Dec. 1, 2015).

### III.     CONCLUSION

For the foregoing reasons, Amiblu's Motion to Stay Execution of Judgment Pending Appeal[54] is GRANTED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __28th__ day of _____April_____, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[54] Rec. Doc. 231.